## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE
## Portland Division

**SETH T. CAREY ,**

                Plaintiff

     v.

**SUNDAY RIVER SKIWAY, and**

**DARREN TRIPP,**

                Defendants

Case #:

### COMPLAINT AND JURY TRIAL DEMAND
### & MOTION FOR INJUNCTIVE RELIEF

NOW COMES, Plaintiff Seth T. Carey, and files this Complaint against Sunday River Skiway and moves for injunctive relief, and alleges as follows:

PRELIMINARY STATEMENT

Plaintiff demands a jury for any and all issues triable to a jury. This action seeks compensatory and actual/economic damages; and costs and attorneys' fees for the claims suffered by Plaintiff, Seth Carey, due to Sunday River Skiway's (referred to herein as "Defendant" or "Sunday River") taking adverse employment actions against him ultimately resulting in the wrongful termination of his employment as explained herein. This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. Section 12112 and/or Americans with Disabilities Amendments Act of 2008 (ADA,ADAAA), as amended, and the Maine Human Rights Act (MHRA).

JURISDICTION

1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331. This is an action to remedy and enjoin Defendants' tortious actions directed at Plaintiff Carey. The parties at all relevant times to this matter resided and/or conducted business in the State of Maine.  Defendants' wrongful and unlawful acts include multiple violations of Plaintiff's constitutional rights under the US and state constitutions, specifically the Americans with Disabilities Act and the Civil Rights Act of 1964.

2. This Court has subject matter jurisdiction under 28 USC § 1331, on the basis of there being a federal question relating to the U.S. Constitution. See Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388 (1971).  Personal and subject matter jurisdiction is properly laid in the federal court based on Federal Questions.

VENUE

3. Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

PARTIES

4. Plaintiff is a former employee of Defendant and resides in Oxford County, Rumford, Maine.

5. Defendant Sunday River Skiway is a ski area with a multitude of ancillary businesses, such as retail, food and beverage, events, real estate, and more.  It is located in Oxford County and an employer qualified to do business in Maine and employs more than 50 regular employees.

STATEMENT OF FACTS

6. Plaintiff Seth Carey has worked off and on for Defendant Sunday River Skiway starting 28 years ago in 1998 when he was 22 as a bartender and working before he started law school and last during the pandemic in 2020 as a server and bartender.

7. Plaintiff sent a letter in August 2024 to the head of security Darren Tripp. General Manager Dana Bullen had told Plaintiff in 2022 that he had to wait to return to work, as there was some discussion on Facebook about a legal matter involving Plaintiff.  Bullen said he did not really know anything about it as he "does not have Facebook."  Bullen told Carey just to give head of security a call when the matter was over.  After the legal matter involving Carey and an ex-girlfriend had been resolved, Plaintiff tried to contact Darren Tripp by phone numerous times.  Carey then sent him a letter.  When he did not receive a written response, he called Mr. Tripp again and when he finally reached him, Tripp told him he could not work there because he pled guilty to a misdemeanor for allegations that had already been levied against Plaintiff years before working at Sunday River in 2022.

8. Those allegations and Plaintiff's suspension from law practice were widely covered in the state media.

9. Plaintiff was shocked first of all because he had worked for Sunday River years after these allegations were levied and he had been suspended from legal practice, which was covered widely in the news coverage.   Moreover, Plaintiff knew of several former and current employees that are felons.  They have drug and violent crime arrests and convictions, yet they work at Sunday River.  That is unfortunate because Carey had been prevented from working there for years since these false politically-motivated charges were levied against him by political rivals. He was not convicted of any of those charges and only took a plea to a simple misdemeanor.  He has no other criminal record and his record at Sunday River has been exemplary.

10. Plaintiff was always the hardest worker. He took his job seriously and did the little things that others felt are beneath them. For example, when the pandemic hit in March 2020, Plaintiff was one of the few people that volunteered to stay behind and do the deep clean of the Jordan Hotel kitchen and restaurants, as well as some work at the Summit. No one else wanted to do this; not only due to the threat of catching COVID, but also because it was for minimum wage. He also started at the bottom during that season. He went from a fledgling law practice, then receiving almost 50,000 votes running for DA and almost being elected until this false allegation, to was a table busser. He cleaned off tables and set up banquets. He was just ecstatic to have a job at a place he loves to be. It was also during a time when he was suspended from his professional career due to fabricated allegations. It made him love his job all that much more that he was accepted by Sunday River despite these false allegations.

11. Plaintiff began working for Defendant as a bartender in 1998.

12. Plaintiff has the disability attention deficit disorder.

13. Despite Plaintiff's disability, he was able to perform all the essential functions of his job with no accommodations. Plaintiff made Defendant aware of his disability and notified his managers.

CONDITIONS PRECEDENT

14. All conditions precedent to jurisdiction have occurred or been complied with.

15. Plaintiff filed a Charge of Discrimination with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS ACT

16. Plaintiff realleges and incorporates herein by reference each and every

allegation contained in paragraphs 1 through 15 of this Complaint.

17. Defendant deliberately and unconstitutionally discriminated against Mr.
Carey in violation of the Civil Rights Act of 1964 and his liberty by causing or
participating in his harassment and perpetuation of obvious false accusations
that were all dismissed.

18. Defendant and its agents acted with the intent or purpose to discriminate
against Mr. Carey.

19. The conduct of Defendant violated clearly established codified or other
rights, of which Defendant knew, or of which a reasonable private official
should have known.

20. The acts, omissions, policies, patterns, practices, and customs of
Defendant complained of herein were intentional, reckless, and show a callous
disregard for, or deliberate indifference to Mr. Carey's privacy, security,
freedom, and civil and enumerated rights.

21. These violations are compensable pursuant to the Civil Rights Act. As a
direct and proximate result of these Defendant's conduct, Mr. Carey has
suffered economic damages and significant emotional harm.

### SECOND CAUSE OF ACTION

### VIOLATION OF AMERICANS WITH DISABILITIES ACT

22. Plaintiff realleges and incorporates herein by reference each and every
allegation contained in paragraphs 1 through 21 of this Complaint.

23.  Defendant deliberately and unconstitutionally discriminated against Mr.
Carey in violation of the Americans With Disabilities Act and his liberty by
causing or participating in his harassment and perpetuation of obvious false

accusations that were all dismissed. Defendant and its agents acted with the intent or purpose to discriminate against Mr. Carey.

24. The conduct of Defendant violated clearly established codified or other rights, of which Defendant knew, or of which a reasonable private official should have known.

25. The acts, omissions, policies, patterns, practices, and customs of Defendant complained of herein were intentional, reckless, and show a callous disregard for, or deliberate indifference to Mr. Carey's privacy, security, freedom, and civil and enumerated rights.

26. These violations are compensable pursuant to the ADA. As a direct and proximate result of these Defendant's conduct, Mr. Carey has suffered economic damages and significant emotional harm.

## THIRD CAUSE OF ACTION
## <u>DISCRIMINATION OF BASIS OF DISABILITY</u>

27. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

28. The MHRA provides the opportunity to seek, obtain, and hold employment without discrimination because of disabilities. That is considered to be a civil right.

29. The purpose of the MHRA is to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on the account of, inter alia, disabilities. MHRA recognizes that the practice of denying employment opportunities and discriminating in terms of employment substantially and adversely affects the interest of employees, employers, and the public in general.

30. At all relevant times herein, Plaintiff was an employee protected by the MHRA, which, inter alia, prohibits an employer from terminating the employment of an employee on the basis of a disability. Under Maine law, a

disability includes not only a current disability, but also being perceived or regarded by the employer as having or having had a condition that currently has no disabling effect but may become an impairment limiting the individual's ability to participate in major life activities in the future (including working).

31. As alleged herein, Defendant knew that Plaintiff had a disability. Thus, Defendant knew that Plaintiff had a disability covered under the MHRA.

32. As alleged herein, Plaintiff's disability was a motivating factor in Defendant's decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employee Plaintiff in any position, to refuse to engage in the interactive process, and/or to take other adverse job actions against Plaintiff. Thus, Defendant discriminated against Plaintiff because of his disability, in violation of MHRA.

33. The doctrines of equitable tolling and continuing violations apply to Plaintiff's claim of discrimination.

34. As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

35.  Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.

## FOURTH CAUSE OF ACTION

### Disability/Perceived Disability Discrimination and Failure to Reasonably Accommodate

36. Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as if fully set forth herein.

37. Plaintiff was a member of a protected class as a qualified employee with a disability/perceived disability.

38. Defendant was on notice Plaintiff suffered from a disability.

39. Plaintiff suffered from a disability/perceived disability but was still performing the essential functions of his job.

40. Plaintiff alleges Defendant violated the ADA when Defendant took adverse actions against Plaintiff in not rehiring him after the season shut down due to COVID.

41. Plaintiff also requested a reasonable accommodation that existed and was reasonable at the time requested.

42. Defendant failed to engage in the interactive process to see if Plaintiff could be accommodated as a qualified individual with a disability.

43. Defendant failed to provide the reasonable accommodation requested by Plaintiff.

44. Plaintiff was replaced by a non-disabled employee and/or treated less favorably than individuals outside of his protected class based on disability.

## FIFTH CAUSE OF ACTION

### Harassment on the Basis of Disability

45. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

46. MHRA provides that it shall be unlawful for an employer or for any person to harass an employee because of a person's disability.

47. As alleged above, during Plaintiff's employment with Defendant, Defendant intentionally engaged in harassment on the basis of Plaintiff's disability.

48. Defendant, including through its director of security, acted in a manner that was antagonistic to Plaintiff and which exhibited harassing motivations, intentions, and consciousness. A reasonable person subjected to the harassing conduct would find, as Plaintiff did, that the harassment so altered Plaintiff's legitimate prospective employment.

49. The doctrines of equitable tolling and continuing violations apply to Plaintiff's claim of harassment.

50. As a proximate result of Defendant willful, knowing, and intentional harassment against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

51. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

52. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.


**SIXTH CAUSE OF ACTION**

**Failure to Prevent, Investigate, and Remedy Discrimination, Harassment, or Retaliation**

53. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

54. Maine law requires employers to "take all reasonable steps necessary to prevent" and correct wrongful behavior, including but not limited to, discriminatory and harassing behavior in the workplace.

55. ("Harassment of an employee ... shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."). Pursuant to this statute, Defendant was required to take all reasonable steps to prevent harassment, discrimination, and retaliation based on Plaintiff's sex, gender, and/or disability.

56. During the course of Plaintiff's employment, Defendant failed to prevent Tripp and others from engaging in intentional actions that resulted in Plaintiff

being treated less favorably, and subjected to harassment and a hostile work environment, because of Plaintiff's protected statuses (i.e., sex, gender, and/or disability).

57. Although Defendant was aware of a number of actions and comments to and about Plaintiff that constituted harassment, discrimination, and retaliation Defendant did not take immediate or corrective action to prevent further harassment, discrimination, and/or retaliation against Plaintiff.

58. As alleged herein and above, Defendant violated Maine law by failing to take all reasonable steps necessary to prevent the harassment, discrimination, and retaliation from occurring.

59. As a proximate result of Defendant's willful, knowing, and intentional failure to prevent, investigate or remedy harassment, discrimination, and retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

60. As a proximate result of Defendant's willful, knowing, and intentional failure to prevent, investigate, or remedy discrimination, harassment, or retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

61. Pursuant to MHRA, Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

62. Defendant through its agents committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.

**SEVENTH CAUSE OF ACTION**

**Failure to Accommodate Disability**

63. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

64. Under the MHRA, an employer that is aware of an employee who has a disability has an affirmative duty to make reasonable accommodations for that disability. The duty arises even if the employee has not requested reasonable accommodation.

65. Under the MHRA, leave of absence and/or intermittent leave can be a form of reasonable accommodation.

66. Plaintiff provided Defendant with information that he was disabled. Therefore, Defendant knew that Plaintiff was suffering from a disability covered under the MHRA.

67. Plaintiff was able to perform the essential job duties of her position with Defendant with no reasonable accommodation for his disability. At all times during Plaintiff's employment with Defendant, Plaintiff was otherwise qualified to do his job.

68. As a proximate result of Defendant's willful, knowing, and intentional conduct, as alleged above, Plaintiff has sustained and continues to sustain substantial losses of earnings and employment benefits.

69. As a proximate result of Defendant's willful, knowing, and intentional conduct, as alleged above, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

70. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.

## EIGHTH CAUSE OF ACTION

## Aiding, Abetting, Inciting, Compelling, or Coercing Acts Forbidden by FEHA

71. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

72. The MHRA provides that it is unlawful for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under the MHRA.

73. At all relevant times, Defendant and their agents, including their head of security Darren Tripp, knew or should have known that Plaintiff had rights pursuant to MHRA, to be free from discrimination, harassment and retaliation, and to take leave. They also knew, or should have known, that Plaintiff was entitled to receive reasonable accommodations for his disability, and that they were obligated to engage in the interactive process to identify a reasonable accommodation.

74. As alleged herein, Defendant and their agents, including Tripp, assisted, supported, facilitated, participated in, encouraged, and/or urged, forcefully, with overwhelming pressure, and/or with threats, the violation of the MHRA by discriminating, harassing and retaliating against Plaintiff.

75. As a result, Defendant and their agents, including Tripp, aided, abetted, incited, compelled, and/or coerced the doing of acts forbidden under the MHRA, or attempted to do so, in violation of MHRA.

76. As a proximate result of Defendant's violation of Maine law, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

77. As a proximate result of Defendant's violation of Maine law, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

78. Defendant committed the acts herein carelessly, wantonly and negligently, with the wrongful intention of discarding Plaintiff, from an improper motive amounting to malice, and in conscious disregard of the rights of Plaintiff.

Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.

**NINTH CAUSE OF ACTION**

**Retaliation for Opposing Practices Forbidden by MHRA**

79. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

80. At all times herein mentioned, the MHRA was in full force and effect and was binding on Defendant. This statute requires Defendant to refrain from retaliating against any employee for opposing practices forbidden by the MHRA or who asserts rights under MHRA, including complaining of  discrimination or harassment on the basis of disability and/or sex and gender, among other things.

81. Defendant, through their agents and supervisors, took actions and made a number of comments to and about Plaintiff that exhibited discriminatory, harassing and retaliatory motivations, intentions, and consciousness.

82. As alleged herein and above, during Plaintiff's employment with Defendant, Defendant intentionally engaged in discrimination and harassment, about which Plaintiff complained to Defendant, including complaints about not being accommodated for his disabilities and being retaliated against and discriminated against because of his protected statuses, as stated above.

83. The doctrines of equitable tolling and continuing violations apply to Plaintiff's claims of retaliation.

84. As a proximate result of Defendant's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

85. As a proximate result of Defendant's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

86. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.

**TENTH CAUSE OF ACTION**

**Wrongful Termination**

87.. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

88. Under Maine law, it is unlawful for an employer to terminate an employee in violation of a fundamental public policy of the United States of America and/or the State of Maine.

89. As alleged herein, Defendant's decision to terminate Plaintiff was substantially motivated by Plaintiff's protected status in blatant violation of the public policy protections set forth in the MHRA and Maine Labor Code. Plaintiff is informed and believes that Defendant's managing agents made the decision to terminate Plaintiff and that Defendant ratified their decision.

90. As a direct and proximate result of the violation of Plaintiff's rights under Maine law, Plaintiff has sustained and continues to sustain substantial losses of earnings and employment benefits.

91. As a proximate result of the violation of Plaintiff's right under Maine law, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

92. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of

the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.

**ELEVINTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

93. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

94. A person intentionally inflicts emotional distress when he/she engages in extreme and outrageous conduct with either: (1) an intent to cause emotional distress; or (2) reckless disregard of the probability of causing emotional distress, and actually does cause severe emotional suffering.

95. Defendant owed Plaintiff a duty of care not to cause Plaintiff emotional distress.

96. As alleged herein and above, Defendant knowingly harassed Plaintiff based on his disability, causing her severe emotional distress. Defendant further caused Plaintiff severe emotional distress by conspiring against Plaintiff and terminating her employment for discriminatory and retaliatory reasons.

97. Defendant was aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood, would devastate Plaintiff and cause him extreme hardship.

98. Defendant breached its duty to Plaintiff by way of their own conduct, as alleged herein and above.

99. Defendant's discriminatory, harassing, and retaliatory actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff to suffer extreme emotional distress that exceeded the normal risks of the employment relationship.

100. Such acts of Defendant were intentional, extreme, and outrageous, and were done with the intent to cause serious emotional distress or with reckless disregard of the probability of causing Plaintiff serious emotional distress.

101. As a proximate result of Defendant's extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

102. As a proximate result of Defendant's extreme and outrageous conduct, Plaintiff was compelled to and did employ the services of medical personnel, and the like, to care for and treat him, and did incur, medical, professional and incidental expenses.

103. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.

**TWELVTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**

104. Plaintiff incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

105. Defendant owed Plaintiff a duty of care not to cause Plaintiff emotional distress, including the duty to take all reasonable steps necessary to prevent discrimination and harassment.

106. As alleged herein and above, Defendant engaged in discriminatory, harassing, and retaliatory actions against Plaintiff with wanton and reckless disregard of the probability of causing Plaintiff to suffer extreme emotional distress.

107. Defendant breached their duty to Plaintiff by way of their own conduct, as alleged herein and above.

108. As alleged herein and above, Defendant knowingly harassed Plaintiff based on his disability, causing his severe emotional distress. Defendant further caused Plaintiff severe emotional distress by conspiring against Plaintiff and terminating him employment for discriminatory and retaliatory reasons. Such conduct was done in a careless or negligent manner, without consideration for the effect of such conduct upon Plaintiff's emotional well-being.

109. Defendant knew, or should have known, that treating Plaintiff in the manner alleged above, including depriving Plaintiff of his livelihood, would devastate Plaintiff and cause Plaintiff extreme hardship.

110. As a proximate result of Defendant's negligent conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

111. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendant in an amount according to proof.


**THIRTEENTH CAUSE OF ACTION**

**Violation of An Act Relating to Fair Chance in Employment**

112. On October 18, 2021, a new Maine law named, 'An Act Relating to Fair Chance in Employment' went into effect.  This new law prohibits employers from inquiring about an individual's criminal history and from stating in employment advertisements that an individual with a criminal history may not apply. This law as well as case law does not allow Sunday River to ban Plaintiff

from employment due to his plea-bargained misdemeanor. Employers that are found to have violated this law may be "subject to a penalty of not less than $100 nor more than $500 for each violation." The Maine Department of Labor enforces this law.

113. An employer may inquire about a prospective employee's criminal history during an interview or once the prospective employee has been determined otherwise qualified for the position. If an employer inquires about a prospective employee's criminal record, the prospective employee, if still eligible for the position under applicable federal or state law, must be afforded an opportunity to explain the information and the circumstances regarding any convictions, including post-conviction rehabilitation. Furthermore, while a private company can in fact discriminate with whom they hire and do not hire, your policy does not seem to be applied consistently.

114. There are multiple felons that work at Sunday River; at least one allegedly is a sex offender on the registry. Several current and past employees have drug and violent crime convictions. How is it that Plaintiff is on its "do not hire" list, when he has worked for Sunday River so diligently at a high-level of service for all these years? There seemingly needs to be a full investigation of inconsistent and discriminatory hiring practices at Sunday River.

115. There has been litigation by state and city governments across the country to enforce anti-discrimination regarding hiring practices surrounding the non-hire of prospective employees arbitrarily; which seems quite clearly to be the case here. Again. Plaintiff had a minor misdemeanor charge and Defendant's current employees are convicted felons of serious crimes. Companies have been fined hundreds of thousands of dollars for such discrimination. See State of New York v. Marshalls Dept. Stores, 2384 NYS 2017, 2389, and City of Philadelphia v. Lyft, Inc. 455 Penn.SC. 2018, 461.

116. As the Attorney General in the <u>Marshalls</u> case stated in a press release, "Obtaining meaningful employment is often the most crucial step towards reducing the chances of recidivism among formerly incarcerated persons. That is why my office is committed to breaking down barriers that impede rehabilitation, especially those that prevent fair access to employment." Sunday River is currently not providing fair access to employment- the employment he has had for parts of two decades, and last just a few years ago.

## **MEMORANDUM OF LAW**

Sunday River states that it "prohibits discrimination." Sunday River in practice does the *exact opposite*. It actually does everything to discriminate against certain employees like Plaintiff. Sunday River has no legal ground for the position that it does not discriminate. They never responded or tried to defend Plaintiff's argument that they have employed recently convicted felons of violent and sexual crimes and those with pending felony charges. This hypocritical suspect hiring practice also is true for those on the sex offender registry. Again, they know or should know this is the case, yet they try to bury these facts in order to deflect culpability for their discrimination in the instant case. Unfortunately for Defendants, the criminal status of their employees is too easily provable.

Based on information and belief, Sunday River's policy is to hire anyone and everyone as long as the public and their well-to-do customers do not find out. There have been employees that have been charged with crimes that have made the "news." Those are the ones that Sunday River allegedly takes a tough stance on, so as to appear that they have "zero tolerance" for criminal employees, to the public and their consumers. That may or may not be good and fair policy. But in a case like Plaintiff's, where it is high-profile because of politics, when he was exonerated, the false and sensationalized publicity should not be held against an Plaintiff employee for a Class E misdemeanor.

Before the MHRC, Defendant argued that Plaintiff "does not have a disability" or "we did not know he had a disability." This contention is also easily provable as false. Plaintiff informed his bosses upon being hired that he had ADHD. He told Slider's manager James Stroumbas and supervisor Aaron Fultz that he had this disability, which caused him sometimes to forget something, but he usually overcame it by being extra vigilant and outworking everyone. In stating that his persistence in getting back to work after Sunday River opened back up for the season in 2021 was "inappropriate," they demonstrate how they thought Plaintiff was mentally disabled, without admitting it.

This disability has affected his work before in the food and beverage serving career field. When he was a server at The City Fish Market in Boca Raton, FL he was reprimanded for forgetting about a table that he had in a unique new spot outdoors. He was also accused by another patron of "being on drugs" when the kitchen messed up his order. Having this disability has proven to be a challenge in all phases of life, but especially school and employment. However, he has not let it defeat him in many respects, through shear hard work and vigilance. His managers at Sunday River knew from the news coverage of him being suspended to practice as a lawyer, and that is why he had to come back to Sunday River for work. HR and management knew about this falsely alleged violent and sex crime conduct. Yet he was never fired or had any roles reduced. As is always the case when he worked for Sunday River, he got more responsibilities and worked more and more hours as the season progressed, until they were shut down by the pandemic. Sunday River's attitude only changed when he was arrested years after the alleged conduct, for obvious political reasons. Sunday River however got caught up in the sensationalism of media coverage and erroneously bought that he was suddenly a criminal. That, although the allegations from him getting suspended from his law career did not change at all. They simply imputed that he had a mental disability from that coverage. That would be one thing, but they prevented him from being rehired once that perception changed in every

reasonable, rational person's mind when all the charges were dropped.  He pled to an unrelated non-charged crime, to be done with the case, so he could get back to work.  Sunday River did not act reasonably or rationally.

Sunday River's position is that it "declined to hire Mr. Carey because of widely reported and documents incidents involving violent and criminal conduct…"  Notice how they intentionally use the word "incidents" instead of "accusation."  This is important because the fact that these were unproven accusations, that ultimately were fully dropped, demonstrates that there is something else going on.  When juxtaposed with their stable of felons and sex offenders currently working for them, the only rational answer is discrimination.  They interestingly refer to Plaintiff's nearly complete exoneration as "lack of remorse."  Contrary to their contention, he was never given "ample opportunities to explain and contextualize [his] recent guilty plea to assault." He was given no opportunity, because he was decisively shut down from any meaningful discussion by GM Dana Bullen and his head of security Darren Tripp.  This, despite the promise by Bullen to contact Tripp once the matter had been resolved.  What actually happened and the heartless dismissiveness is quite apparent in the letters he and Bullen wrote to Plaintiff.

When the pandemic happened in the middle of the ski season, Plaintiff volunteered to stay an extra week or so after almost everyone else was gone home to collect unemployment. Plaintiff stayed to shut down the food and beverage portion of the resort and do a deep clean.  He volunteered to do that because he is a loyal worker with integrity.  It was for minimum wage, which was almost half of what he made on average.  Helping out and going above and beyond was par for the course with Plaintiff, because he loves working at Sunday River.  He has said it is the best job he has had, and his plan has been to work his way up the ladder in administration all the way to the top someday. That dream is now compromised, but that is why he will fight until the end for what is right and to vindicate himself.

Plaintiff was hired at Sunday River after the alleged misconduct with a girlfriend that allegedly occurred in 2017/2018.  He was hired by Sunday River

in 2019/2020, after he was suspended as a lawyer. That ordeal was very "high profile" in itself, but magnified exponentially, as he was running for district attorney at the time. It was in the newspapers and on all the television news. Still, he was hired by Aaron Fultz and Sunday River even though Fultz, HR, knew about his publicized troubles. Still, as Sunday River admits, his job performance was "largely unremarkable," which shows Sunday River had nothing to be concerned with. It was only after the criminal charges based on the allegations in 2018 were filed in 2021 that Sunday River decided to irrationally discriminate against him and not rehire him, which makes no legal sense.

Defendant has argued that it prides itself on "excellent customer service and keeping its guests safe." Sunday River has boasted it is particularly reticent to employ individuals "who have recently committed serious crimes, particularly crimes involving violence or theft." These are just meaningless words when we look at the fact that Sunday River employes all kinds of employees with serious recent crimes. That, coupled with the fact that Plaintiff worked there after the "crimes" allegedly occurred, and had an "uneventful" work experience. Then when Plaintiff pointed out that these allegations were untrue, which was proven by the fact that every one of them were dropped except one misdemeanor, he is blamed for "lack of remorse."

Defendant is not untruthful with his statement that, [i]n the past, Sunday River has hired or continued to employ individuals with criminal convictions in situations in which the underlying conduct did not involve violence or theft." Let us unpack the inaccuracies of this statement. First, it's not in the "past." Plaintiff knows on information and knowledge that they currently employ employees with criminal convictions for violence or theft. Not only that, but as previously stated, these are not run of the mill criminals. These are violent convicted felons and even on the sex offender registry.

Plaintiff had applied at least a dozen times for posted jobs at Sunday River when it re-opened after the pandemic. Plaintiff also went to the restaurants to try to talk to the managers in person. Defendant GM Dana

Bullen eventually called Plaintiff and told him that he could not come back to work while there was pending charges. He said he did not even know what happened- that he was told something was written on Facebook and he did not know what it was because he "does not use Facebook." Plaintiff told him he did not do what was alleged and that the charges would be dropped or he would win at trial. Plaintiff's interpretation of how Bullen left it was to call Darren Tripp when the case was over and those violent felonies he was charged with were dropped. Just like Plaintiff predicted, those charges were dropped. Interestingly, their cite for that occurrence before the MHRC is an article entitled: *Maine State Police Respond to Lawyer's Criticisms in Case Against Seth Carey.* This is interesting because the article states exactly the case he made to Sunday River this whole time- that he was falsely accused of these crimes. It is quite sad and cynical that Sunday River took his plea that he was falsely accused and turns it around, saying he "has no remorse" and continued to call him a violent criminal who committed serious crimes. This was after they are formally accused of discriminating against a person with mental disabilities.

Defendant's stated reason for not rehiring was due to "serious and recent criminal history." Yet they allegedly hire probably mostly people with at least criminal records and many felons. It is likely that the majority of Sunday River employees have at least a misdemeanor on their record or have been arrested. That fact would devastate all credibility in this case. Most news articles about the Carey arrest were about how the charges were dropped and an enquiry by the US Attorney and Attorney General were called upon for a corrupt investigation by the Maine State Police.

**PRAYER FOR RELIEF**

Wherefore Plaintiff Seth Carey respectfully prays for judgment and relief against Defendant Sunday River Skiway, as follows:

1. For compensatory damages, including emotional distress damages, in an amount to be ascertained at trial;

2. For liquidated damages as permitted by law;

3. For interest on the unpaid wages at 10% per annum, and/or any other applicable provision providing for pre-judgment interest;

4. For punitive damages in an amount sufficient to punish or make an example of Defendant;

5. For all available injunctive, equitable and other relief, including remedies authorized by law;

6. For affirmative relief' as defined by Maine law;

7. For reasonable attorneys' fees and costs, including expert costs; and

8. Award Plaintiff actual damages;

9. Order Defendant to pay Plaintiff back pay and front pay and benefits;

10. Award Plaintiff compensatory damages for mental anguish;

11. Award Plaintiff punitive damages to be determined by the trier of fact;

12. Grant Plaintiff pre-judgment and post-judgment interest;

13. Order Defendant to pay Plaintiff's costs and attorney's fees in this action;

14. For such further relief that the Court may deem just and proper.


DATED AT Rumford, Maine July 20, 2025


Respectfully Submitted,

/s/ Seth Carey

Seth T. Carey, Plaintiff